UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                    Case No. 09-60028

JACQUELINE HARRIS and                                     Chapter 7
ROBERT LEE HARRIS,
                                                          Judge Thomas J. Tucker
                Debtors.
_____/

ALLSTATE INSURANCE COMPANY,

                Plaintiff,

v.                                                        Adv. Pro. No. 09-6215

JACQUELINE HARRIS and
ROBERT LEE HARRIS,

                Defendants,

etc.
_____/

**OPINION REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT
FILED BY PLAINTIFF AND DEFENDANTS (DOCKET ## 117, 123)**

**I.  Introduction**

    This adversary proceeding presents an issue under the federal common law of collateral

estoppel.  The Defendants are the Chapter 7 Debtors, Jacqueline Harris and Robert Harris. The

Plaintiff, Allstate Insurance Company, claims that the Harrises owe Allstate over $81,000 due to

alleged insurance fraud, and that this debt is nondischargeable under 11 U.S.C. § 523(a)(2) and

523(a)(6).  Before the Harrises filed their Chapter 7 case, they were the named plaintiffs in a

lawsuit against Allstate, in the United States District Court for the Eastern District of Michigan.

The Harrises' complaint in that case asserted a claim under their homeowners insurance policy,

issued by Allstate, for losses the Harrises suffered in a fire at their home. Ultimately, Allstate

obtained a judgment dismissing the Harrises' claim. Allstate also filed a counterclaim, seeking

damages for alleged insurance fraud by the Harrises. After the Harrises failed to respond,

Allstate obtained a default judgment on the counterclaim, in the amount of $81,640.23.

In this adversary proceeding, Allstate has filed a motion for summary judgment, based on

collateral estoppel. Allstate argues that based on the district court judgments and the doctrine of

collateral estoppel, this Court is bound to determine that the Harrises owe Allstate over

$81,640.23 plus interest, and that this judgment debt is nondischargeable for fraud under

§ 523(a)(2).[1] The Harrises have filed their own summary judgment motion, contending among

other things that the district court judgments do not have any preclusive effect under the doctrine

of collateral estoppel.[2]

The collateral estoppel issue arises from some strange facts. The Harrises claim that the

district court judgments were entered in a case that was filed and prosecuted by an attorney,

Stuart M. Collis, who had no authority to represent the Harrises as their attorney, and who

purported to be their attorney without their knowledge or consent. Rather, the Harrises contend,

they had retained only a different attorney, Harvey J. Zameck, to represent them in a lawsuit

against Allstate. Zameck was never an attorney of record for the Harrises in the lawsuit against

Allstate. After the Harrises retained Zameck, his license to practice law was suspended, and

ultimately he was disbarred. The Harrises further claim that they were never informed by

anyone, and never knew, that any lawsuit had been filed in their name against Allstate, or that

---

[1] Docket # 123.

[2] Docket # 117.

2

Allstate had filed a counterclaim against them, until well after the adverse judgments had been entered against them.

For the reasons stated in this opinion, and based on the undisputed facts and the uncontradicted evidence in the record, the Court concludes that the two judgments that Allstate obtained against the Harrises have no preclusive effect whatever under the federal common law of collateral estoppel. The Court will grant the Harrises' motion for summary judgment in part, and will deny Allstate's motion for summary judgment.

## II. Facts

The material facts are undisputed. On April 14, 2004, a fire damaged the Harrises' residence located at 19717 Fairport in the City of Detroit. The Harrises submitted a claim on their homeowners insurance to Allstate, and, in the months following the fire, Allstate made some payments on the claim. During this time, Allstate investigated whether the Harrises intentionally set the fire, and whether the claim should be denied for this reason. The insurance policy excluded coverage for "loss to the property . . . consisting of or caused by . . . [i]ntentional or criminal acts of or at the direction of any insured person, if the loss that occurs: may be reasonably expected to result from such acts; or is the intended result of such acts."[3]

Due to the delay in receiving full payment on their insurance claim, the Harrises sought legal representation.[4] On August 4, 2004, the Harrises retained Harvey J. Zameck to act as their attorney. Zameck was licensed to practice law in Michigan at the time of his retention.[5]

---

[3] Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 4-B, Insurance Policy (Docket # 135) at 14-15.

[4] *See* Pl.'s 2nd Mot. Summ. J. Ex. 5-S; Robert Harris Dep. (Docket # 123) at 13-14.

[5] Defs.' Am. Third-Party Compl. Ex. G, Suspension Notice (Docket # 83).

Allstate formally denied the Harrises' claim on October 21, 2004, based on the policy exclusion quoted above.[6] Before that time, Allstate had paid the Harrises a total of $81,640.23 for property damage relating to the fire, and for certain living expenses.[7]

Allstate asserts that its denial of coverage was warranted, because the evidence shows that the Harrises purposely started the fire at their home. Allstate alleges that a neighbor witnessed Robert Harris flee from the residence only moments before the fire started; that an investigation into the cause of the fire revealed evidence consistent with arson; and that the Harrises made conflicting statements regarding their whereabouts and actions at the time of the fire and immediately thereafter.[8] Allstate also alleges that the Harrises had a financial motive to commit insurance fraud. Allstate alleges that the Harrises were making insufficient income to support themselves; they were behind in payments on their utilities, mortgages, and property taxes; they owed $14,000 on a judgment against them for their involvement in a traffic accident; and they faced the possibility of losing their home to a mortgage foreclosure or a tax forfeiture.[9]

The Harrises dispute Allstate's claim that they committed arson and insurance fraud. On the present record, there is a conflict in the evidence on this subject, which the Court cannot resolve by summary judgment. But that conflict in the evidence is not relevant to the collateral estoppel issue.

On March 22, 2005, a lawsuit was filed in state court in the names of the Harrises, against

---

[6] Defs.' Am. Third-Party Compl. Ex. D, Denial Letter (Docket # 83).

[7] *See* Comp. Ex. 1, Allstate's Countersuit (Docket # 1).

[8] Br. Supp. Pl.'s Resp. Defs.' Mot. Summ. J. (Docket # 135) at 1-6, 15-16.

[9] *Id.* at 6-9, 16.

4

Allstate (State of Michigan, Third Circuit Case No. 05-508313 CK). The suit alleged a breach of contract by Allstate, based on Allstate's denial of the insurance claim, and sought damages.[10] Although retained as the Harrises' attorney, Zameck did not file the state court action. The State Bar of Michigan had suspended his law license on February 28, 2005 for thirty days, and Zameck's license was further suspended on March 2, 2005, for 180 days.[11] As a result, and at Zameck's request, attorney Stuart Collis interceded and filed the suit as the Harrises' attorney of record.[12] The evidence is undisputed that the Harrises knew nothing of Stuart Collis, and knew nothing of the lawsuit filed by Collis.[13]

The complaint filed by Stuart Collis for the Harrises stated, in the opening line of text, "NOW COME Plaintiffs, Jacqueline Harris and Robert Harris, by Harvey J. Zameck, their attorney, and for their complaint say: . . .."[14] But in the caption of the complaint, and in the summons served on Allstate with the complaint, Stuart Collis is identified as "Attorney for Plaintiffs," and "Plaintiff's Attorney," and is the only attorney so identified. And Stuart Collis is the only one who signed the complaint, and he did so as "Attorney for Plaintiffs."[15]

---

[10] Pl.'s 2nd Mot. Summ. J. Ex. 5-A, Harrises' State Complaint (Docket # 123).

[11] The general suspension notice presented to the Court does not indicate whether the suspensions ran concurrently. *See* Defs.' Am. Third-Party Compl. Ex. G, Suspension Notice (Docket # 83).

[12] Am. Aff. Collis (Docket # 17) ¶ 11 ("While I did sign the summons and complaint in this matter, I had only done so as a favor to Harvey Zameck, to get the case filed to avoid him, as he said, blowing a statute of limitations while his license was suspended for what I believed was 30 days.").

[13] *See* discussion in Part V-A of this opinion.

[14] Pl.'s 2nd Mot. Summ. J. Ex. 5-A, Harrises' State Complaint at 1 (Docket # 123)

[15] Ex. 5-A at unnumbered pages 1, 2, 6.

Allstate responded to the suit by removing it to federal court, based on diversity jurisdiction (E.D. Mich. Case 05-40155).  On April 30, 2005, Collis served Allstate with interrogatories on behalf of the Harrises.[16]  Collis then represented the Harrises on June 28, 2005 at a deposition of Otha Odems, a witness who allegedly placed Robert Harris at the scene of the fire moments before it started.[17]  Neither of the Harrises attended that deposition.  Meanwhile, the State Bar of Michigan again suspended Harvey Zameck's law license, on August 23, 2005, this time for three years.[18]

After Collis, the purported attorney for the Harrises, failed to comply with certain discovery requirements, Allstate sought and obtained dismissal of the Harrises' complaint, by a default judgment entered on April 13, 2006.[19]  On that same date, Allstate filed a counterclaim to recover the $81,640.23 it had paid on the Harrises' insurance claim.[20]  The counterclaim alleges fraud by the Harrises.  As the Harrises' only purported attorney of record in the case, Stuart Collis failed to file an answer or otherwise respond to Allstate's counterclaim.  On October 13, 2006, the district court entered a default judgment against the Harrises on Allstate's counterclaim, for $81,640.23.[21]

---

[16] *See* Pl.'s 2nd Mot. Summ. J. Ex. 5-E, Interrogatories and Request for Production of Documents (Docket # 123) at 1.

[17] *See* Pl.'s 2nd Mot. Summ. J. Ex. 5-G, Otha Odems Dep. (Docket # 123) at 2.

[18] Defs.' Am. Third-Party Compl. Ex. G, Suspension Notice (Docket # 83).

[19] Pl.'s 2nd Mot. Summ. J. Ex. 5-I, Default Judgment in Harrises' Suit (Docket # 123).

[20] Comp. Ex. 1, Allstate's Countersuit (Docket # 1).

[21] Defs.' Am. Third-Party Compl. Ex. H, Default Judgment in Allstate's Countersuit (Docket # 83).

The evidence is undisputed that the Harrises knew nothing of the lawsuit that Collis filed in their name, or of Allstate's counterclaim, until after the adverse judgments were entered, and Allstate tried to collect its judgment.[22]

To try to collect its judgment, Allstate conducted a creditor's examination of the Harrises on July 21, 2008. Later during 2008, Allstate garnished some $4,265.99 of Jacqueline Harris's wages.[23]

On June 26, 2009, the Harrises filed their joint Chapter 7 bankruptcy case. On September 30, 2009, Allstate filed this adversary proceeding, alleging that the Harrises' judgment debt is nondischargeable under 11 U.S.C. § 523(a)(2) and 523(a)(6).[24]

The Harrises filed a third-party complaint on April 15, 2010, which alleged claims against Zameck, Collis, and National Claims Service, LLC as third-party defendants.[25] Zameck did not answer the third-party complaint, and, on June 9, 2010, the Court entered a default judgment against him.[26] The Harrises' third-party claims against Collis and National Claims Service are the subject of cross-motions for summary judgment. The Court addresses those motions in two other opinions, each filed today.

Allstate filed a motion for summary judgment against the Harrises on April 20,

---

[22] *See* discussion in Part V-A of this opinion.

[23] Comp. (Docket # 1) ¶ 7; Collis Motion (Docket # 120), Ex. A.; Ex. E (J. Harris Dep.) at 112.

[24] Docket # 1.

[25] Docket # 23.

[26] Docket # 47.

2010, based on its collateral estoppel argument and § 523(a)(2).[27]   In their response to the

motion[28] and in oral argument made on August 4, 2010, the Harrises argued that they did not

know Stuart Collis; that they never authorized Collis to represent them in any manner; that they

knew nothing of the lawsuit brought against Allstate in their names or Allstate's counterclaim;

and, accordingly, that the adverse judgments against the Harrises have no preclusive effect

against them.  The Harrises relied heavily on an affidavit from Collis,[29] which supports their

factual assertions.

In a bench opinion given on August 4, 2010, the Court denied Allstate's motion.  The

Court ruled that on the record then before it, a genuine issue of material fact existed as to two of

the requirements for collateral estoppel: (1) whether the Harrises "actually litigated" the action in

the district court; and (2) whether the Harrises had a "full and fair opportunity" to participate in

that action.[30]  Both of these requirements must be met in order for a federal judgment to have a

preclusive effect under collateral estoppel.  *See Wolfe v. Perry*, 412 F.3d 707, 716 (6th Cir.

2005).

After conducting discovery, the Harrises filed their present motion for summary judgment

against Allstate.[31]  In their motion, they seek summary judgment on two grounds: (1) that

collateral estoppel does not apply for the reasons stated by the Court in its prior bench opinion;

---

[27] Docket # 26.

[28] Docket # 35.

[29] Docket # 17.

[30] Partial Tr. August 4, 2010 Hr'g (Docket # 172) at 8-9.

[31] Docket # 117.

8

09-06215-tjt   Doc 176   Filed 04/19/12   Entered 04/19/12 14:34:56   Page 8 of 18

and (2) that Allstate cannot prove fraud by the Harrises.  Allstate then filed its second motion for

summary judgment.[32]  The collateral estoppel argument that Allstate advances in its second

motion is essentially the same as it advanced in its first motion.  The main difference is that the

second motion was filed after the close of discovery.

The Court held a hearing on both motions, and now concludes that it must rule in the

Harrises' favor on the collateral estoppel issue.

## III.  Jurisdiction

This Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C.

§§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a)(E.D. Mich.).  Allstate's

nondischargeability claim against the Harrises is a core proceeding under 28 U.S.C.

§ 157(b)(2)(I).

## IV.  Summary judgment standards

Fed.R.Civ.P. 56(a), applicable to bankruptcy adversary proceedings under Fed.R.Bankr.P.

7056, provides that a motion for summary judgment "shall" be granted "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  In *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149-50 (6th Cir. 1995), the

court elaborated:

> The moving party has the initial burden of proving that no genuine
> issue of material fact exists and that the moving party is entitled to
> judgment as a matter of law.  To meet this burden, the moving
> party may rely on any of the evidentiary sources listed in Rule
> 56(c) or may merely rely upon the failure of the nonmoving party
> to produce any evidence which would create a genuine dispute for
> the [trier of fact].  Essentially, a motion for summary judgment is a

---

[32] Docket # 120.

9

means by which to challenge the opposing party to "put up or shut up" on a critical issue.

If the moving party satisfies its burden, then the burden of going forward shifts to the nonmoving party to produce evidence that results in a conflict of material fact to be resolved by [the trier of fact]. In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party. However, if the evidence is insufficient to reasonably support a . . . verdict in favor of the nonmoving party, the motion for summary judgment will be granted. Thus, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff.
. . .

Finally, the Sixth Circuit has concluded that, in the "new era" of summary judgments that has evolved from the teachings of the Supreme Court in *Anderson [v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)], *Celotex [Corp. v. Catrett*, 477 U.S. 317 (1986)] and *Matsushita [Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)], trial courts have been afforded considerably more discretion in evaluating the weight of the nonmoving party's evidence. The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party, the motion should be granted.

*Id.* (internal quotation marks and citations omitted). In determining whether the moving party has met its burden, a court must "believe the evidence of the nonmovant, and draw all justifiable inferences in favor of the nonmovant." *Ingram v. City of Columbus*, 185 F.3d 579, 586 (6th Cir. 1999)(relying on *Russo v. City of Cincinnati*, 953 F.2d 1036, 1041-42 (6th Cir.1992)).

## V. Discussion

### A. The collateral estoppel issue

"Under collateral estoppel, once an issue is actually and necessarily determined by a court

10

of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979) (citations omitted). In the case of a federal court judgment based on diversity jurisdiction, federal law determines what preclusive effect, if any, the judgment has. *J.Z.G. Resources v. Shelby Ins. Co.*, 84 F.3d 211, 213-14 (6th Cir. 1996) (citations omitted).

Under the federal common law, there are five requirements for a federal judgment to have a collateral estoppel effect: (1) the issue in the subsequent litigation must be identical to that resolved in the earlier litigation; (2) the issue must have been actually litigated and decided in the prior action; (3) the resolution of the issue must have been necessary and essential to a judgment on the merits in the prior litigation; (4) the party to be estopped must have been a party to the prior litigation (or in privity with such a party); and (5) the party to be estopped must have had a full and fair opportunity to litigate the issue. *Wolfe v. Perry*, 412 F.3d 707, 716 (6th Cir. 2005).

The fact that the federal judgment is a default judgment does not necessarily preclude collateral estoppel. On the one hand, many cases hold that a default judgment entered against a defendant in a federal court case in which the defendant did not participate or defend (sometimes called a "true default" judgment,) is not given preclusive effect in later litigation between the parties. *See, e.g., Bush v. Balfour Beatty Bahamas, Ltd.* (*In re Bush*)*,* 62 F.3d 1319, 1323 (11th Cir. 1995) (footnote and citations omitted)("The general federal rule . . . is [that o]rdinarily a default judgment will not support the application of collateral estoppel because '[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.'"); *Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir. 1994)("In order to invoke collateral estoppel, an issue must have been 'actually litigated' in the prior action. Accordingly, default judgments are

11

not given preclusive effect in subsequent court proceedings."); *United States v. Gottheiner* (*In re Gottheiner*), 703 F.2d 1136, 1140 (9th Cir. 1983)(citations omitted) ("[T]he default judgment is not given collateral estoppel effect."); *see also Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.1981)("If the important issues were not actually litigated in the prior proceeding, as is the case with a default judgment, then collateral estoppel does not bar relitigation in the bankruptcy court.")(dicta)(citing cases), *overruled on other grounds by Bay Area Factors v. Calvert ( In re Calvert)*, 105 F.3d 315, 319 (6th Cir.1997).

On the other hand, where there has been some participation in the lawsuit by the party, but a default judgment is entered later as a discovery sanction, some cases hold that the judgment is to be given preclusive effect in later litigation. *See, e.g.*, *Wolstein v. Docteroff* (*In re Docteroff*), 133 F.3d 210, 215 (3rd Cir. 1997)(holding that a default judgment entered as a discovery sanction in a federal fraud case had an issue-preclusive effect in a later nondischargeability action).

As this Court pointed out in denying Allstate's first motion for summary judgment, Allstate's collateral estoppel argument raises the question whether the "actually litigated" and "full and fair opportunity to litigate" requirements are met here.[33] The undisputed facts and uncontradicted evidence in the record establish that the Harrisses did not authorize Stuart Collis to represent them as their attorney in the lawsuit against Allstate, and that they did not know anything about that lawsuit or about Collis purporting to represent them, until well after the two adverse judgments were entered against them. In their depositions, Jacqueline and Robert Harris each denied knowing that Collis even existed before they filed bankruptcy, let alone hiring him

---

[33] Partial Tr. August 4, 2010 Hr'g (Docket # 172) at 8-9.

as their attorney.[34]  And in Collis's own affidavits he denied ever having any interaction with the

Harrises, and denied that they hired him to represent them, or ever approved his representation of

them.[35]

There is no evidence in the record to show that the Harrises were contemporaneously

aware of the lawsuit that Collis filed in their names, or of the counterclaim brought by Allstate.

To the contrary, the uncontradicted deposition testimony given by the Harrises is that they had no

knowledge of the suit or counterclaim.[36]  And the notices issued by the federal district court in

that case did not go to the Harrises.  They went only to Collis, as the attorney of record,[37] and, as

Collis stated in his amended affidavit, he never communicated with the Harrises, so he never

personally made them aware of the case.[38]  Nor is there any evidence that Harvey Zameck ever

informed the Harrises that a lawsuit had been filed on their behalf.  The evidence is undisputed

that the first time the Harrises had any knowledge of the lawsuit was at the time of Allstate's

creditor examinations of the Harrises, which Allstate conducted almost two years after the entry

---

[34] Pl.'s 2nd Mot. Summ. J. Ex. 5-P, Jacqueline Harris Dep. (Docket # 123) at 116;  Pl.'s 2nd Mot. Summ. J. Ex. 5-S, Robert Harris Dep. (Docket # 123) at 79-80.

[35] Am. Aff. Collis (Docket # 17) ¶¶ 4-7, 10; Defs.' Resp. Pl.'s Mot. Leave File Mot. Summ. J. Collateral Estoppel Issue Ex. 2, Aff. Collis (Docket # 129) ¶¶ 3-6, 9.

[36] Pl.'s 2nd Mot. Summ. J. Ex. 5-P, Jacqueline Harris Dep. (Docket # 123) at 37-39; Pl.'s 2nd Mot. Summ. J. Ex. 5-S, Robert Harris Dep. (Docket # 123) at 80-82.

[37] *See, e.g.*, Defs.'Am. Third-Party Compl. Ex. H, Default Judgment (Docket # 83) at 2 (showing Collis as only non-CM/ECF participant receiving notice).

[38] Am. Aff. Collis (Docket # 17) ¶¶ 4, 5; Defs.' Resp. Pl.'s Mot. Leave File Mot. Summ. J. Collateral Estoppel Issue Ex. 2, Aff. Collis (Docket # 129) ¶ 3.

of the district court judgments.[39]

At the summary judgment motion hearing, Allstate argued that the Harrises authorized Collis's representation of them by signing Zameck's retention agreement. The retention agreement, which the Harrises admittedly signed, states, in pertinent part, that "CLIENT understands and agrees that CLIENT has hired the law firm of Harvey J. Zameck to represent CLIENT'S interests, but that any attorney designated by Harvey J. Zameck may be called upon *to appear at* trial or any other proceedings on CLIENT'S behalf."[40] At most, this provision authorized other attorneys, such as Collis, to fill in for Zameck at specific proceedings, including arguably the deposition of Otha Odems that Collis attended. But this provision clearly cannot be read to authorize Zameck to turn over the Harrises' insurance claim to an attorney not in his firm,[41] such as Collis, to act as *sole counsel of record* in filing and prosecuting a lawsuit, without the Harrises' knowledge or consent.

The Court concludes that on the present record, there is no genuine issue of material fact that the Harrises neither "actually litigated" nor had a "full and fair opportunity to litigate" any issue decided by the federal district court judgments. In one sense, this case is analogous to the "true default" cases cited above, holding that a federal default judgment entered without any participation in the case by the defendant is *not* given preclusive effect under the doctrine of

---

[39] *See* Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 4-K, Creditors Examination of Jacqueline Harris (Docket # 135) at 51; Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 4-P, Creditors Examination of Robert Harris (Docket # 135) at 36-37.

[40] Defs.' Am. Third-Party Compl. Ex. C, Retention Agreement (Docket # 83) (emphasis added).

[41] The undisputed evidence includes Collis's statement in his affidavit that "I have never been of counsel, shared space, been partners with or shared clients with Harvey Zameck . . .." (Am. Aff. Collis (Docket # 17) ¶ 18).

collateral estoppel. The Harrises cannot be said to have participated at all in the lawsuit against

Allstate, when they did not even know about it, and when the attorney purporting to represent

them in that lawsuit was a stranger, unknown to them, who lacked authority to represent them. In

another sense, this case presents an even stronger argument than in the usual "true default" case,

for denying issue-preclusive effect to the default judgments. In the "true default" case, at least,

the defendant received actual notice of the lawsuit against him, by being served with a summons

and complaint. Here, the Harrises had no actual notice of the lawsuit, until long after the default

judgments had been entered against them. It would violate their basic due process rights to bind

them to the default judgments under these circumstances.

For these reasons, neither of the default judgments entered by the federal district court

against the Harrises has any collateral estoppel effect in this adversary proceeding.

**B.  The merits of Allstate's claim of insurance fraud**

To the extent that Allstate's motion for summary judgment can be construed as arguing

for summary judgment based on the assertion that the Harrises actually committed arson and

insurance fraud, the motion must be denied. Similarly, to the extent that the Harrises' motion

can be construed as seeking summary judgment based on the assertion that Allstate cannot prove

arson or insurance fraud, that motion must be denied. On the present record, the Court cannot

find that "there is no genuine dispute as to any material fact," Fed.R.Civ.P. 56(a), as to whether

the Harrises committed arson and insurance fraud, so the Court cannot resolve this issue by

summary judgment.

**C.  Allstate's request for leave to amend its complaint**

15

At oral argument, Allstate requested leave to amend its complaint in the event the Court did not grant summary judgment for Allstate based on collateral estoppel. The purpose of such amendment would be for Allstate to clearly allege, and to allege with more particularity, that even without giving any collateral estoppel effect to the federal court judgments, the Court should determine that the Harrises owe a debt to Allstate for insurance fraud that is nondischargeable under 11 U.S.C. § 523(a)(2) and 523(a)(6).

The Harrises oppose granting such leave to amend to Allstate. They argue that Allstate is guilty of undue delay in seeking leave to amend to amend its complaint. They also argue that Allstate's complaint is based entirely on the collateral estoppel effect of the federal court judgments, so that now that the Court has rejected the collateral estoppel theory, the Court should dismiss Allstate's complaint with prejudice and enter final judgment for the Harrises.

As this Court recently discussed in the case of *Shapiro v. Harajli* (*In re Harajli*), No. 11-4651, 2012 WL 255326 (Bankr. E.D. Mich., January 27, 2012) at *8,

> Under Fed.R.Civ.P. 15(a)(2), which applies in this adversary proceeding under Fed.R.Bankr.P. 7015, "[t]he court should freely give leave [to amend a pleading] when justice so requires." The court in *United States v. Vehicle 2007 Mack 600 Dump Truck*, 680 F. Supp. 2d 816, 826-27 (E.D. Mich. 2010) described the factors that courts consider in deciding whether to grant leave to amend a pleading:
>
> > Granting or denying leave to amend a pleading is within the trial court's discretion. *See Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). A party seeking to amend an answer must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir.1995). A court may deny leave to amend when a party unnecessarily delayed in seeking

amendment, thereby causing prejudice to the other party or unduly delaying the litigation. *Phelps v. McClellan*, 30 F.3d 658, 66263 (6th Cir. 1994) (citation omitted). In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." *Id*. However, delay alone is insufficient to deny the proposed amendment. *Robinson v. Michigan Consol. Gas Co. Inc.*, 918 F.2d 579, 581 (6th Cir.1990)(citations omitted). Finally, although liberal, it is well established that justice does not require the Court to grant leave to amend a pleading if to do so would be futile. *See In re Ford Motor Co. Securities Litigation, Class Action*, 381 F.3d 563, 574 (6th Cir.2004).

Under the circumstances, the Court finds that Allstate is not guilty of undue delay in seeking leave to amend. Nor has any delay by Allstate been prejudicial to the Harrises. And the Harrises have been on notice from the beginning of this adversary proceeding forward, based on what is alleged in Allstate's complaint and based on statements made by Allstate's counsel during earlier hearings, that Allstate would seek to prove arson and insurance fraud by the Harrises, if the Court ruled that collateral estoppel did not establish those things. In its discretion under Civil Rule 15(a)(2), the Court will grant Allstate's request for leave to amend its complaint.

## VI. Conclusion

For the reasons stated in this opinion, the Court will enter an order granting the Harrises' summary judgment motion in part (on the collateral estoppel issue) and denying it it part (on the

17

merits of Allstate's claim of insurance fraud), and denying Allstate's summary judgment motion.

The order also will grant Allstate leave to file an amended complaint.

**Signed on April 19, 2012**                          /s/ Thomas J. Tucker
                                                       **Thomas J. Tucker**
                                                       **United States Bankruptcy Judge**