UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                          Case No. 09-60028

JACQUELINE HARRIS and                     Chapter 7
ROBERT LEE HARRIS,

                                                                 Judge Thomas J. Tucker

                    Debtors.
_____/

ALLSTATE INSURANCE COMPANY,

                    Plaintiff,

v.                                                              Adv. Pro. No. 09-6215

JACQUELINE HARRIS and
ROBERT LEE HARRIS,

                    Defendants,

etc.
_____/

**OPINION REGARDING MOTION FOR SUMMARY JUDGMENT
FILED BY THIRD-PARTY DEFENDANT
STUART M. COLLIS (DOCKET # 120)**

**I. Introduction**

        This case raises issues about Michigan's statute of limitations for attorney malpractice. This opinion concerns the motion for summary judgment filed by Third-Party Defendant Stuart M. Collis.[1] Collis seeks summary judgment on the claim asserted against him by Defendants and Third-Party Defendants, Robert and Jacqueline Harris, contained in Count III of the Harrises' amended third-party complaint.[2] Collis argues that the Harrises' claim against him is barred by

---

[1] Docket # 120.

[2] Docket # 83.

the applicable Michigan statute of limitations. For the reasons stated in this opinion, the Court agrees with Collis, and will grant Collis's motion.

## II. Background and facts

The Court incorporates by reference the discussion of the background and facts contained in the Court's two other opinions that have been filed today, regarding the other motions for summary judgment filed by the various parties. Some of the facts are repeated in this opinion, for the reader's convenience, and this opinion states some additional facts material to Collis's motion. None of the material facts are in genuine dispute.

Some four months after the Harrises retained attorney Harvey J. Zameck to represent them in pursuing their insurance claim against Allstate, on February 28, 2005, the State Bar of Michigan suspended Zameck's law license for thirty days. Two days later, the State Bar suspended Zameck's license for another 180 days. No one informed the Harrises of Zameck's suspensions.

Unbeknownst to the Harrises, attorney Stuart Collis filed a state court action (State of Michigan, Third Circuit Case No. 05-508313 CK) against Allstate in the Harrises' name on March 22, 2005.[3] Collis says that he did so as a favor to Zameck:[4]

> While I did sign the summons and complaint in this matter, I had only done so as a favor to Harvey Zameck, to get the case filed to avoid him, as he said, blowing a statute of limitations while his license was suspended for what I believed was 30 days.

The suit filed by Collis alleged a wrongful denial of the Harrises' insurance claim, and

---

[3] Am. Aff. Collis (Docket # 17) ¶ 11.

[4] *Id.*

2

sought damages.[5] Allstate removed the case to federal court, based on diversity jurisdiction (E.D. Mich. Case No. 05-40155). Collis purported to represent the Harrises as their sole attorney of record in the case, and in serving interrogatories,[6] and in attending a deposition.[7] Meanwhile, the State Bar again suspended Zameck's law license on August 23, 2005, for an additional three years.[8]

Collis's representation of the Harrises as their attorney of record was, to put it mildly, less than adequate. After Collis failed to comply with certain discovery requirements, Allstate sought and obtained dismissal of the Harrises' complaint, by a default judgment entered on April 13, 2006.[9] On that same date, Allstate filed a counterclaim to recover the $81,640.23 it had paid on the Harrises' insurance claim.[10] The counterclaim alleged fraud by the Harrises. Even though he was the Harrises' only purported attorney of record, Stuart Collis failed to file an answer or otherwise respond to Allstate's counterclaim. On October 13, 2006, the district court entered a default judgment against the Harrises on Allstate's counterclaim, for $81,640.23.[11]

To try to collect its judgment, Allstate conducted a creditor's examination of the Harrises

---

[5] Allstate's 2nd Mot. Summ. J. Ex. 5-A, Harrises' State Complaint (Docket # 123).

[6] Allstate's 2nd Mot. Summ. J. Ex. 5-E, Interrogatories and Request for Production of Documents (Docket # 123) at 1.

[7] Allstate's 2nd Mot. Summ. J. Ex. 5-G, Otha Odems Dep. (Docket # 123) at 2.

[8] Defs.' Am. Third-Party Compl. Ex. G, Suspension Notice (Docket # 83).

[9] Pl.'s 2nd Mot. Summ. J. Ex. 5-I, Default Judgment in Harrises' Suit (Docket # 123).

[10] Compl. Ex. 1, Allstate's Countersuit (Docket # 1).

[11] Defs.' Am. Third-Party Compl. Ex. H, Default Judgment in Allstate's Countersuit (Docket # 83).

on July 21, 2008. Later during 2008, Allstate garnished some $4,265.99 of Jacqueline Harris's wages.[12]

On June 26, 2009, the Harrises filed their joint Chapter 7 bankruptcy case. On September 30, 2009, Allstate filed this adversary proceeding, alleging that the Harrises' judgment debt is nondischargeable under 11 U.S.C. § 523(a)(2) and 523(a)(6).[13]

The Harrises filed a third-party complaint on April 15, 2010, and filed an amended third-party complaint on September 15, 2010, which alleged claims against Zameck, Collis, and National Claims Service, LLC ("NCS") as third-party defendants.[14] Zameck did not answer the third-party complaint, and, on June 9, 2010, the Court entered a default judgment against him.[15] The Harrises' third-party claim against NCS is the subject of cross-motions for summary judgment, which the Court addresses in a separate opinion, filed today. Collis has moved for summary judgment, arguing that the Harris's third-party claim against him is barred by the applicable statute of limitations. This opinion addresses Collis's motion.

The Harrises' third-party claim against Collis complains of Collis's failure to do anything on behalf of the Harrises in response to Allstate's counterclaim, even though he was purportedly the Harrises' counsel of record in the federal district court case. The Harrises allege that Collis's inaction, including "the failure to withdraw from the case or arrange for substitution of attorneys," resulted in Allstate's $81,640.23 default judgment being entered against the Harrises,

---

[12] Compl. (Docket # 1) ¶ 7; Collis Motion (Docket # 120), Ex. A.; Ex. E (J. Harris Dep.) at 112.

[13] Docket # 1.

[14] Docket ## 23, 83.

[15] Docket # 47.

4

and caused the Harrises related damages.[16]

**III. Jurisdiction**

This Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a)(E.D. Mich.). The Court has "related to" subject matter jurisdiction over the Harrises' third-party claims against Collis and NCS; those claims are "related to" the Harrises' bankruptcy case, within the meaning of the statutes cited above. This is so because the Harrises' claims against Collis and NCS are, at least in part, property of the bankruptcy estate in the Harris's bankruptcy case. The Harrises have claimed exemptions in their claims against Collis and NCS, up to a total value of $20,852.00, and have valued those claims in their most recently-amended bankruptcy schedules at $50,000.00.[17] Any recovery above the $20,852.00 amount will belong to the bankruptcy estate. And by agreement of the parties, the Court has ordered that both the Chapter 7 Trustee and Allstate still may object to the Harrises' claimed exemptions in the third-party claims, until 15 days after the conclusion of this adversary proceeding.[18] Because of this, it is possible that the Debtors' $20,852.00 claimed exemptions will be limited or denied.

Basically, the Chapter 7 Trustee is standing back and allowing the Harrises to bear the cost and burden of prosecuting their third-party claims, even though the bankruptcy estate retains an interest in those claims.

---

[16] *See* Defs. Am. Third-Party Compl. (Docket # 83) at ¶ 20.

[17] *See* each Debtor's amended Schedule C, filed in the bankruptcy case on September 17, 2010 (Docket # 50 in Case No. 09-60028).

[18] *See* Order Resolving Trustee's Objections to Debtors' Third Amended Exemptions, [etc.] (Docket # 52 in Case No. 09-60028).

5

09-06215-tjt    Doc 177    Filed 04/19/12    Entered 04/19/12 14:36:29    Page 5 of 16

This Court discussed "related to" jurisdiction in *Allard v. Coenen* (*In re Trans-Industries, Inc.*) 419 B.R. 21 (Bankr. E.D. Mich. 2009). There the Court pointed out that under the statutes cited above,

> [t]his Court has subject matter jurisdiction over 'all cases under title 11,' and over 'all civil proceedings' (1) 'arising under title 11' or (2) 'arising in' a case under title 11 or (3) 'related to' a case under title 11.
>
> A "case under title 11" refers "merely to the bankruptcy petition itself, filed pursuant to 11 U.S.C. §§ 301, 302, or 303." *Michigan Employment Sec. Comm'n v. Wolverine Radio Co., Inc.,* 930 F.2d 1132, 1140 (6th Cir.1991).
> . . .
>
> "The phrase 'arising under title 11' describes those proceedings that involve a cause of action created or determined by a statutory provision of title 11, and 'arising in' proceedings are those that, by their very nature, could arise only in bankruptcy cases." *Bliss Technologies, Inc. v. HMI Indus., Inc. (In re Bliss Technologies, Inc.),* 307 B.R. 598, 602 (Bankr.E.D.Mich.2004)(quoting *Wolverine Radio,* 930 F.2d at 1144). These two categories of civil proceedings are "core" proceedings within the meaning of 28 U.S.C. §§ 157(b)(1) and 157(b)(2). *Id.* The bankruptcy court can enter final orders and judgments in all "core" proceedings. 28 U.S.C. § 157(b)(1).
>
> Civil proceedings that fall only within the third category of the bankruptcy court's subject matter jurisdiction-its "related to" jurisdiction-are non-core. . . .
>
> The Sixth Circuit has adopted the test articulated in *Pacor, Inc. v. Higgins (In re Pacor, Inc.)*, 743 F.2d 984, 994 (3d Cir.1984), for determining "related to" jurisdiction:
>
>> "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against

> the debtor's property. An action is related to
> bankruptcy if the outcome could alter the debtor's
> rights, liabilities, options, or freedom of action
> (either positively or negatively) and which in any
> way impacts upon the handling and administration
> of the bankrupt estate."

419 B.R. at 26-28 (footnotes omitted).

Because of the bankruptcy estate's interest in the outcome of the Harrises' third-party claims, including their claim against NCS, the outcome of such claims "could conceivably have [an] effect on the estate being administered in bankruptcy," by obtaining funds that the Chapter 7 Trustee can use to pay claims. Thus, the Court has "related to" jurisdiction over the third-party claims.[19]

As noted in the *Allard v. Coenen* case, however, such "related to" claims are non-core. But all of the parties in this adversary proceeding (*i.e.*, the Harrises; NCS; Collis; and Allstate) have expressly consented to the bankruptcy court conducting any trial in this adversary proceeding and entering a final judgment on the Harrises' third-party claims, under 28 U.S.C. § 157(c)(2).[20]

## IV. Summary judgment standards

The Court incorporates by reference the discussion of standards governing motions for summary judgment, contained in Part IV of its opinion regarding the Allstate-Harris summary judgment motions, filed separately today.

---

[19] The Court made this same ruling during the hearing on the summary judgment motions. (Tr., Docket # 175, at 83).

[20] This express consent was given by counsel for each of these parties, on the record, during the hearing on the summary judgment motions. (Tr., Docket # 175, at 84-86).

7

## V. Discussion

Collis certainly gave Allstate, and the state and federal courts, the appearance that he was representing the Harrises as their attorney, by signing the complaint and filing the lawsuit against Allstate, by remaining at all times the only attorney of record for the Harrises in that lawsuit, by serving interrogatories, and by attending a deposition. But the Harrises contend that *they* never even knew about Collis, and never knew of the lawsuit Collis filed and Allstate's counterclaim against them, until well after the adverse judgments had been entered against them. And the Harrises allege that Collis "never met with the Harris[es], never signed a retainer agreement, and his only representation was at a deposition of a witness, Otha Odems, without the knowledge of" the Harrises.[21]

As discussed in the opinion regarding the Harris-Allstate summary judgment motions, filed today, these contentions by the Harrises are established by the uncontradicted evidence, and there is no genuine dispute about them.

## A. Michigan's statute of limitations for legal malpractice applies.

Collis argues that the Michigan statute of limitations governing legal malpractice claims applies to the Harris's third-party claim against him, and bars that claim. The limitations period for a claim of "malpractice" against an attorney in Michigan is established by the combination of two statutes, Mich. Comp. Laws §§ 600.5805(6) and 600.5838. In combination, these statutes require that a claim for legal malpractice be filed within 2 years after the claim accrues, or "within 6 months after the plaintiff discovers or should have discovered the existence of the

---

[21] Defs. Am. Third-Party Compl. (Docket # 83) at ¶ 15.

claim, whichever is later." *See* Mich.Comp.Laws §§ 600.5838(2); 600.5805(6).[22] A claim for legal malpractice "accrues" when the attorney "discontinues serving the plaintiff in a professional . . . capacity as to the matters out of which the claim arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." Mich.Comp.Laws § 600.5838(1).[23]

---

[22] These statutes provide, in pertinent part:

> Sec. 5838. (1) . . . a claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession accrues at the time that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.
>
> (2) . . . an action involving a claim based on malpractice may be commenced at any time within the applicable period prescribed in sections 5805 or 5851 to 5856, or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. The burden of proving that the plaintiff neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim shall be on the plaintiff. A malpractice action which is not commenced within the time prescribed by this subsection is barred.

Mich. Comp. Laws § 600.5838, and:

> Sec. 5805. (1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.
> . . .
>
> (6) Except as otherwise provided in this chapter, the period of limitations is 2 years for an action charging malpractice.

Mich. Comp. Laws § 600.5805.

[23] There is an exception for fraudulent concealment of a claim. The statute of limitations is extended in that situation, under Mich. Comp. Laws § 600.5855, which provides:

> Sec. 5855. If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is

9

The Harrises contend that they never had an attorney-client relationship with Collis.[24] For this reason, they say, they cannot maintain a claim against Collis for legal malpractice.[25] *See, e.g., Simko v. Blake*, 448 Mich. 648, 532 N.W.2d 842, 846 (1995); *Rhem v. Horn*, No. 10-10050-BC, 2010 WL 4792175, at *7 (E.D. Mich. November 18, 2010). Rather, the Harrises argue that their claim against Collis is not a claim for legal malpractice, so the legal malpractice statute of limitations does not apply.

Instead, the Harrises say, their claim is based on a more general negligence theory, one that is not specific to professional negligence. They argue:

> As articulated in *Fultz v. Union Commerce Assocs.,* 470 Mich. 460, 465, 683 N.W.2d 587, "If one voluntarily undertakes to perform an act, having no prior obligation to do so, a duty may arise to perform the act in a nonnegligent manner. *Home Ins Co v Detroit Fire Extinguisher Co, Inc,* 212 Mich App 522, 529; 538 NW2d 424 (1996); *Osman, supra;* Keeton, Prosser & Keeton, Torts. § 56,
>
> liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

The Harrises do not argue that this statue applies. They do not allege or argue that Stuart Collis "fraudulently conceal[ed]" the existence of the Harrises' claim against him or "the identity of any person who is liable on the claim."

---

[24] *See* Third Party Pls' Resp. to Stuart M. Collis's Mot. for Summ. J. (Docket # 129) at 2-3 ¶ 4 ("[t]he Harrises . . . state . . . that Collis was never their attorney even though, . . . his name did appear on pleadings, apparently drafted by now disbarred attorney Harvey Zameck;" . . . "even though Collis . . . was 'technically counsel of record' for the Harrises in the insurance case, clearly, he never represented them"); Br. in Supp. of Third Party Pls.' Resp. to Stuart M. Collis's Mot. for Summ. J. (Docket # 129) at 3 ("there is no question . . . [that Stuart Collis] never represented the Harrises even though . . . his name does appear on pleadings.")

[25] *See* [Harrises'] Suppl. Brief . . . Regarding Stuart Collis Mot. for Summ. J. (Docket # 170) at unnumbered page 3. And the Harrises concede in their Supplemental Brief that they "lack[ed]" the "existence of an attorney-client relationship" with Collis. *Id.*

10

pp 380-381 (5th ed, 1984)". Clearly, the activities of Stuart Collis would fall within the parameters of voluntarily performing an act (in this case, without the knowledge or consent of the Harrises) and [per]forming the same in a negligent manner.[26]

Because this is their legal theory, the Harrises argue, the applicable statute of limitations is the catch-all provision in Mich.Comp.Laws § 600.5813. That statute states:

> Sec. 5813. All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes.

In response to this, Collis argues that even if the Harrises' "volunteer" negligence theory is valid, the claim is still a claim of legal malpractice, to which the malpractice limitations sections apply.

The Court agrees with Collis on this point. The Harrises' "volunteer" theory of negligence is merely an alternative way to try to establish that Collis owed a duty of due care to the Harrises. If the Harrises and Collis had expressly agreed with each other for Collis to represent the Harrises in the lawsuit, *that* would have established a duty of due care on the part of Collis. That, of course, is the normal way in which an attorney comes to represent a client, and when that happens, the attorney is deemed to have a duty of due care to the client; *i.e.*, a duty to perform professional services in a non-negligent manner. But because that did not happen between the Harrises and Collis, the Harrises must find some other basis to establish that Collis owed them a duty of due care. Unless Collis had such a duty to the Harrises, he cannot be liable to them for negligence. Hence, the Harrises' "volunteer" theory.

But even if Collis owed a duty of due care to the Harrises based on this "volunteer"

---

[26] *Id.*

11

negligence theory, that duty was a duty *to perform professional legal services* in a non-negligent manner. The *nature* of that duty is the same as what it would have been if these parties had expressly and knowingly entered into an attorney-client relationship — *i.e.*, a duty to perform professional legal services in a non-negligent manner. Here only the *source* of that duty is different.

Every allegedly negligent act or omission by Collis that the Harrises complain of was: (1) an act or omission by an attorney; (2) in the performance of professional legal services. Thus, the Harrises' third-party claim against Collis is "a claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession," within the meaning of Mich. Comp. Laws § 600.5838(1), quoted in footnote 22 above. It is therefore a "claim for malpractice" within the meaning of that statute, as well as a "claim based on malpractice" within the meaning of Mich. Comp. Laws § 600.5838(2), and "an action charging malpractice" within the meaning of Mich. Comp. Laws § 600.5805(6), quoted above.

The Michigan case law cited by Collis supports this conclusion, although the Court is not aware of any cases that are directly on point. The Harrises cite no cases to support their view that the legal malpractice statute of limitations does not apply.

In one of the cases cited by Collis, *Aldred v. O'Hara-Bruce*, 458 N.W.2d 671 (Mich. App. 1990), a couple sued the attorney they had hired to defend their son in a criminal case. They argued that their claim should be viewed as a breach of contract claim, for purposes of the statute of limitations. The Michigan Court of Appeals rejected that argument, holding that "although the complaint is worded in the form of a breach of contract claim, the gravamen of the action is one for legal malpractice." 458 N.W.2d at 672. The Court explained that:

12

> In determining whether an action is of a type subject to a particular statute of limitations, we look at the basis of the plaintiff's allegations. **The type of interest allegedly harmed is the focal point in determining which limitation period controls.** The gravamen of an action is determined by reading the claim as a whole. **Accordingly, this Court has held that claims against attorneys brought on the basis of inadequate representation sound in tort and are governed by the malpractice statute of limitations**, even though a plaintiff may assert that the attorney's actions breached a contract.

*Id.* (citations omitted, emphasis added). The court applied the 2-year malpractice statute of limitations, and found the claim to be time-barred.

While the *Aldred* case is not directly on point, its reasoning supports the Court's ruling in this case. Applying the wording of *Aldred* to this case, the Harrises' claim against Collis is a claim against an "attorney[] brought on the basis of inadequate representation," and therefore under Michigan law the claim "sound[s] in tort and [is] governed by the malpractice statute of limitations." *Id.*

For the reasons stated above, the Court concludes that the Michigan statutes of limitation for legal malpractice claims applies to the Harrises' third-party claim against Collis.

**B. The third-party claim against Collis is time-barred.**

Applying the legal malpractice statute of limitations, the Court concludes that the claim against Collis is time-barred.

**1. The claim is barred by the 2-year statute of limitations.**

It is clear from the undisputed facts that the Harrises' claim against Collis accrued, under Mich.Comp.Laws § 600.5838(1), no later than October 13, 2006, when the federal district court entered the second of the two default judgments against the Harrises (the $81,640.23 judgment

13

on Allstate's fraud counterclaim).  At that point, the two adverse judgments against the Harrises became final judgments, and the district court case — the case in which Stuart Collis was the attorney of record for the Harrises — was concluded.  Stuart Collis's affidavit states that he did not provide, or undertake to provide, any professional services for the Harrises after October 13, 2006.[27]  The Harrises do not allege otherwise, and there is no evidence to the contrary.  Thus, no later than October 13, 2006, Stuart Collis  "discontinue[d] serving the [Harrises] in a professional . . . capacity" within the meaning of § 600.5838(1).  No later than that date, then, the Harrises' malpractice claim accrued.  The Harrises filed no claim against Collis within 2 years after that date, *i.e.*, by October 13, 2008.  The Harrises did not file their Chapter 7 bankruptcy case until June 26, 2009; Allstate filed this adversary proceeding on September 30, 2009; and the Harrises first filed their third-party claim against Stuart Collis on April 15, 2010.  That claim is therefore barred by the 2-year statute of limitations.

**2. The claim is not saved by the 6-month discovery rule in the statute.**

It is also clear, based on the undisputed facts, that the Harrises did not file their third-party claim against Collis "within 6 months after [they] discover[ed] or should have discovered the existence of the claim," within the meaning of Mich. Comp. Laws § 600.5838(2).  Viewing the evidence in a light most favorable to the Harrises, it is clear that at a minimum, the Harris's "should have discovered" the existence of their claim against Collis no later than August 2008.

The Harrises were put on notice that a large judgment had been entered against them in favor of Allstate, when they each received a subpoena to appear, and did appear, at the office of

---

[27] Collis Aff., Ex. B to Collis Motion for Summary Judgment (Docket # 120) at ¶ 9.

14

09-06215-tjt    Doc 177    Filed 04/19/12    Entered 04/19/12 14:36:29    Page 14 of 16

Allstate's attorney for a creditor's examination on July 21, 2008.[28] This, of course, should have made them realize that something had gone terribly wrong with their insurance claim against Allstate. That realization should have been reinforced by the fact that after they received the subpoenas, they had tried to contact their attorney Harvey Zameck, and had been unable to reach him.[29] And that realization should have been further reinforced when Jacqueline Harris's wages were garnished by Allstate, beginning with the garnishment writ that was issued on August 22, 2008 and that was reissued on December 15, 2008.[30] (As noted earlier in this opinion, Allstate garnished over $4,000 of Jacqueline's wages.) The garnishment writs each recited the judgment amount. And Jacqueline Harris testified that she actually obtained a copy of the judgment against her when Allstate garnished her wages.[31]

With all of these alarm bells ringing, the Harrises should have done at least a minimal investigation to find out what had happened with their case against Allstate, and they should have done so beginning no later than July 21, 2008. The Harrises could have reviewed the docket and file in the federal court case, either online or by personally visiting that court's Clerk's office; or they could have retained a new attorney to find out what had happened for them; or they could have asked for details from Allstate's attorney at the July 21, 2008 creditor's examination. Not only *could* the Harrises have done any of these things; but also they *should* have done at least one

---

[28] Robert Harris Dep., Ex. D to Collis Mot. for Summ. J. (Docket # 120) at 82-83; Jacqueline Harris Dep., Ex. E to Collis Mot. for Summ. J. (Docket # 120) at 94-95.

[29] Jacqueline Harris Dep. at 129-30.

[30] Exhibit A to Collis Mot. for Summ. J. (Docket # 120), pp. 20-23 (garnishment writs); Jacqueline Harris Dep. at 94, 130-31.

[31] Jacqueline Harris Dep. at 94.

15

of these things.

By taking any of these steps, the Harrises quickly would have learned, no later than August 2008, about Stuart Collis, and how he had been their only attorney of record in the lawsuit, and how the $81,640.23 default judgment had been entered against them because of Collis's failure to timely respond to Allstate's counterclaim. In short, the Harrises "should have discovered the existence of [their] claim" against Collis no later than August 2008. The 6-month post-discovery prong of the statute of limitations, Mich. Comp. Laws § 600.5838(2), therefore expired no later than the end of February 2009, almost four months before the Harrises filed their Chapter 7 bankruptcy case, and more than a year before the Harrises first filed their third-party claim against Collis.

For these reasons, the Court concludes that the Harrises' third-party claim against Stuart Collis is barred by the applicable statute of limitations.

## VI. Conclusion

For the reasons stated in this opinion, the Court will enter an order granting Stuart Collis's motion for summary judgment.

**Signed on April 19, 2012**                    /s/ Thomas J. Tucker
                                                **Thomas J. Tucker**
                                                **United States Bankruptcy Judge**