UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                          Case No. 09-60028

JACQUELINE HARRIS and                                           Chapter 7
ROBERT LEE HARRIS,
                                                                Judge Thomas J. Tucker
                Debtors.
_____/

ALLSTATE INSURANCE COMPANY,

                Plaintiff,

v.                                                              Adv. Pro. No. 09-6215

JACQUELINE HARRIS and
ROBERT LEE HARRIS,

                Defendants,

etc.
_____/

**OPINION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT
FILED BY THIRD-PARTY PLAINTIFFS AND THIRD-PARTY DEFENDANT
NATIONAL CLAIMS SERVICE, LLC (DOCKET ## 99, 111)**

**I. Introduction**

      This opinion concerns two motions for summary judgment filed in this adversary

proceeding, namely:

      (1) the summary judgment motion filed by Third-Party Defendant National Claims
          Service, LLC[1] ["NCS"]; and

      (2) the summary judgment motion filed by Third-Party Plaintiffs, Jacqueline and Robert
          Harris, seeking summary judgment against NCS.[2]

---

[1] Docket # 99.

[2] Docket # 111.

The Court held a hearing on these and other motions. For the reasons explained in this opinion, the Court will grant NCS's motion for summary judgment, and will deny the Harrises' motion for summary judgment.

## II. Background and facts

The Court incorporates by reference the discussion of the background and facts contained in the Court's two other opinions filed today, regarding the other motions for summary judgment filed by the various parties. Some of the facts are repeated in this opinion, for the reader's convenience.

Additional facts material to the NCS-Harris cross-motions are as follows. None of these facts are in genuine dispute. A representative of NCS attached an advertising brochure to the remains of the Harrises' home shortly after the fire on April 14, 2004.[3] The brochure identified NCS as "Licensed Adjusters for the Insured," and gave NCS's address in Detroit.[4] The brochure advertised that NCS offers to its clients "the best possible settlement" in the recovery of "losses from a fire."[5]

The Harrises contacted NCS, and they entered into an agreement with NCS on May 21, 2004.[6] The agreement describes NCS as "adjusters of fire, flood and windstorm losses" and as offering "appraisals of losses servicing the entire State of Michigan."[7] The one-page agreement

---

[3] *See* Harrises' Am. Third-Party Compl. Ex. A, Advertising Brochure (Docket # 83).

[4] *Id.*

[5] *Id.*

[6] Harrises' Am. Third-Party Compl. Ex. B, NCS Agreement (Docket # 83).

[7] Harrises' Am. Third-Party Compl. Ex. B, NCS Agreement (Docket # 83).

signed by the Harrises states:

> Jacqueline Harris + Robert Harris hereby retains National Claims Service, L.L.C. **to assist in the preparation and presentation of their claim with the insurance company or companies** with an interest in their claim of loss caused by insured perils to: Fire, Building (box checked), Contents (box checked), located at 19717 Fairport for a loss occurring on April 14th, 2004. The Insured agrees to pay and assigns to National Claims Service, L.L.C. [t]en [p]ercent (10%) of the total adjusted claim negotiated for the Insured's benefit regardless of who effects the adjustment or the recovery.[8]

On or about July 6, 2004,[9] NCS prepared and submitted the Harrises' proof of loss to Allstate.

After receiving the Harrises' proof of loss, Allstate's requested on July 23, 2004 to examine the Harrises under oath, regarding the circumstances of the fire.[10] NCS then recommended to the Harrises that they seek legal representation, and that they consider, in particular, attorney Harvey J. Zameck.[11]

The sole member and manager of NCS, Mark Plaskov,[12] physically led the Harrises to Zameck's doorstep on August 4, 2004. That same day, the Harrises retained Zameck as their attorney.[13] Zameck was licensed to practice law in Michigan at the time.[14] Zameck then

---

[8] *Id.* (emphasis added).

[9] *See* Allstate's Resp. Harrises' Mot. Summ. J. Ex. 4-W, Proof of Loss (Docket # 135).

[10] *See* Harrises' Mot. Summ. J. Against NCS Ex. 5, Notice of Pending Examinations (Docket # 111).

[11] Aff. Plaskov (Docket # 53) ¶¶ 6-8.

[12] Id. ¶¶ 8-10.

[13] Harrises' Am. Third-Party Compl. Ex. C, Retention Agreement (Docket # 83).

[14] Harrises' Am. Third-Party Compl. Ex. G, Suspension Notice (Docket # 83).

3

represented the Harrises at Allstate's examinations, conducted on August 26, 2004 and September 1, 2004.[15]

In a letter dated October 21, 2004, Allstate accused the Harrises of purposely causing the fire at their home.[16] Allstate formally denied the Harrises' claim, based on an exclusion in the policy.[17] Up to that point, Allstate had paid the Harrises a total of $81,640.23 on their claim.[18]

Some four months later, on February 28, 2005, the State Bar of Michigan suspended Zameck's law license for thirty days. Two days later, the State Bar suspended Zameck's license for another 180 days. Neither Zameck nor NCS informed the Harrises of Zameck's suspensions. Instead, NCS sent the Harrises a letter dated March 7, 2005, stating the following:

> Please be advised you will be receiving a letter from Attorney, Mr. Harvey Zameck, stating your case is being assigned to one of Harvey's Associates. Mr. Zameck will be a consultant on your legal team, due to your situation. . . .
>
> This is just a courtesy letter to help explain the letter you will be receiving from Mr. Harvey Zameck.[19]

There is no evidence that Harvey Zameck ever sent such a letter to the Harrises.

Unbeknownst to the Harrises, Attorney Stuart Collis filed a state court action (State of Michigan, Third Circuit Case No. 05-508313 CK) against Allstate in the Harrises' name on

---

[15] Allstate's Resp. Harrises' Mot. Summ. J. Ex. 4-J, Jacqueline Harris's Examination under Oath (Docket # 135) at 1; Allstate's Resp. Harrises' Mot. Summ. J. Ex. 4-I, Robert Harris's Examination under Oath (Docket # 135) at 1.

[16] Harrises' Am. Third-Party Compl. Ex. D, Denial Letter (Docket # 83).

[17] Id.

[18] *See* Comp. Ex. 1, Allstate's Countersuit (Docket # 1).

[19] Harrises' Am. Third-Party Compl. Ex. E, March 7, 2007 Letter from NCS (Docket # 83).

March 22, 2005.[20] Collis says that he did so as a favor to Zameck:[21]

> While I did sign the summons and complaint in this matter, I had only done so as a favor to Harvey Zameck, to get the case filed to avoid him, as he said, blowing a statute of limitations while his license was suspended for what I believed was 30 days.

The suit filed by Collis alleged a wrongful denial of the Harrises' insurance claim, and sought damages.[22] Allstate removed the case to federal court, based on diversity jurisdiction (E.D. Mich. Case No. 05-40155). Collis purported to represent the Harrises as their sole attorney of record in the case, and in serving interrogatories,[23] and in attending a deposition.[24] Meanwhile, the State Bar again suspended Zameck's law license on August 23, 2005, for an additional three years.[25]

Collis's representation of the Harrises as their attorney of record was, to put it mildly, less than adequate. After Collis failed to comply with certain discovery requirements, Allstate sought and obtained dismissal of the Harrises' complaint, by a default judgment entered on April 13, 2006.[26] On that same date, Allstate filed a counterclaim to recover the $81,640.23 it had paid on the Harrises' insurance claim.[27] The counterclaim alleged fraud by the Harrises. As the Harrises'

---

[20] Am. Aff. Collis (Docket # 17) ¶ 11.

[21] *Id.*

[22] Allstate's 2nd Mot. Summ. J. Ex. 5-A, Harrises' State Complaint (Docket # 123).

[23] Allstate's 2nd Mot. Summ. J. Ex. 5-E, Interrogatories and Request for Production of Documents (Docket # 123) at 1.

[24] Allstate's 2nd Mot. Summ. J. Ex. 5-G, Otha Odems Dep. (Docket # 123) at 2.

[25] Defs.' Am. Third-Party Compl. Ex. G, Suspension Notice (Docket # 83).

[26] Pl.'s 2nd Mot. Summ. J. Ex. 5-I, Default Judgment in Harrises' Suit (Docket # 123).

[27] Comp. Ex. 1, Allstate's Countersuit (Docket # 1).

5

only purported attorney of record, Stuart Collis failed to file an answer or otherwise respond to Allstate's counterclaim. On October 13, 2006, the district court entered a default judgment against the Harrises on Allstate's counterclaim, for $81,640.23.[28]

To try to collect its judgment, Allstate conducted a creditor's examination of the Harrises on July 21, 2008. Later during 2008, Allstate garnished some $4,265.99 of Jacqueline Harris's wages.[29]

On June 26, 2009, the Harrises filed their joint Chapter 7 bankruptcy case. On September 30, 2009, Allstate filed this adversary proceeding, alleging that the Harrises' judgment debt is nondischargeable under 11 U.S.C. § 523(a)(2) and 523(a)(6).[30]

The Harrises filed a third-party complaint on April 15, 2010, and filed an amended third-party complaint on September 15, 2010, which alleged claims against Zameck, Collis, and NCS as third-party defendants.[31] Zameck did not answer the third-party complaint, and, on June 9, 2010, the Court entered a default judgment against him.[32] Collis has moved for summary judgment, on statute-of-limitations grounds, and the Court addresses that motion in a separate opinion, filed today. The Harrises' third-party claim against NCS is the subject of cross-motions for summary judgment, which the Court addresses in this opinion.

The Harrises' third-party claim against NCS is based solely on the legal theory that NCS

---

[28] Defs.' Am. Third-Party Compl. Ex. H, Default Judgment in Allstate's Countersuit (Docket # 83).

[29] Comp. (Docket # 1) ¶ 7; Collis Motion (Docket # 120), Ex. A.; Ex. E (J. Harris Dep.) at 112.

[30] Docket # 1.

[31] Docket ## 23, 83.

[32] Docket # 47.

modified the parties' original written contract, and then breached that modified contract. The Harrises seek indemnification from NCS for their losses allegedly caused by NCS's breach of contract. The Harrises and NCS each seek summary judgment.

## III. Jurisdiction

The Court incorporates by reference Part III of its opinion concerning Stuart Collis's summary judgment motion, filed separately today. Everything stated in that opinion regarding subject matter jurisdiction; core vs. non-core; and the parties' consent to this Court entering final judgment on the Harris's third-party claims, applies to the Harris's third-party claim against NCS.

## IV. Summary judgment standards

The Court incorporates by reference the discussion of standards governing motions for summary judgment, contained in its first opinion filed today.

## V. Discussion

The Harrises' counsel confirmed during oral argument that their action against NCS is based entirely upon a breach of contract theory, and that the contractual duty allegedly breached arises not from the parties' original written contract but, rather, from an alleged modification of that contract.[33]

"[B]reach of contract is a state law cause of action[.]" *Bender v. Jordan*, 623 F.3d 1128, 1130 (D.C. Cir. 2010). The Harrises and NCS agree that Michigan law applies.

To prevail on a breach of contract action under Michigan law, a plaintiff must first

---

[33] *See* Transcript, Docket # 175, at 79-80; *see also* Harrises' Resp. NCS's Mot. Summ. J. (Docket # 104) ¶ 2 (admitting sole legal theory of breach of contract).

7

establish the elements of a valid contract. *Eastland Partners Ltd. Partners v. Village Green Mgmt. Co.* (*In re Brown*), 342 F.3d 620, 628 (6th Cir. 2003)(citation omitted). Those elements are (1) parties competent to contract; (2) a proper subject matter; (3) a legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Id*. (citation omitted). As counsel for the Harrises acknowledged in oral argument,[34] to state a claim for breach of a *modified* contract, the party alleging a modification has the enhanced burden of proving by clear and convincing evidence that the parties actually modified their original contract. *Omimex Energy, Inc. v. Blohm*, No. 5:06-CV-68, 2007 WL 3465804, at *4 (W.D. Mich. November 15, 2007)(citing *Dault v. Schulte*, 187 N.W.2d 914, 916 (Mich. Ct. App. 1971)); *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 258 (Mich. 2003). A contract modification requires all of the normal requirements of a valid contract, listed above, including the two elements regarding mutuality. *Scarlet v. Allen*, 295 N.W. 365, 369 (Mich. 1940). "[O]ne cannot unilaterally modify a contract because by definition, a unilateral modification lacks mutuality." *Quality Prods. & Concepts Co.*, 666 N.W.2d at 258. Once a valid contract and its modification are established, a plaintiff seeking to recover on a breach of contract theory then must prove by a preponderance of the evidence the terms of the modified contract, that the defendant breached the terms, and that the breach caused the plaintiff injury. *Brown*, 342 F.3d at 628.

The parties agree that the Harrises and NCS executed a valid written contract for NCS to assist in the preparation and presentation of their claim with Allstate, in exchange for ten percent of the total adjusted claim negotiated for the Harrises' benefit."[35] The Harrises do not claim that

---

[34] Transcript, Docket # 175, at 80.

[35] *See* Harrises' Am. Third-Party Compl. Ex. B, NCS Agreement (Docket # 83).

NCS breached the parties' original written contract. Rather, the Harrises claim that the original contract was modified by NCS's conduct. In essence, the Harrises claim that under the modified contract, NCS had a duty to provide the Harrises with a competent and attentive "legal team," including a competent and non-negligent attorney. NCS breached this duty, the Harrises say, because attorneys Zameck and Collis negligently caused the Harrises to suffer the two adverse judgments in the federal district court case.

The Harrises' third-party complaint and subsequent filings can be read to argue that NCS had several duties under the alleged modification: (1) a duty to provide the Harrises with one or more attorneys, to provide legal services;[36] (2) a duty to monitor the Harrises' attorneys' effective performance of those legal services;[37] (3) a duty to inform the Harrises of Zameck's suspension;[38] (4) a duty to "secure successor counsel upon Zameck's suspension;"[39] and (5) a duty to provide the Harrises with a "legal team."[40] At oral argument on the motions, however, the Harrises'

---

[36] Harrises' Am. Third-Party Compl. (Docket # 83) ¶ 16; Br. Supp. Harrises' Resp. NCS's Mot. Summ. J. (Docket # 104) at 6, 8; Harrises' Mot. Summ. J. Against NCS (Docket # 111) ¶¶ 7, 8, 15; Br. Supp. Harrises' Mot. Summ. J. Against NCS (Docket # 111) at 2, 3.

[37] Harrises' Am. Third-Party Compl. (Docket # 83) ¶¶ 9, 11-16; Harrises' Resp. NCS's Mot. Summ. J. (Docket # 104) ¶ 18; Br. Supp. Harrises' Resp. NCS's Mot. Summ. J. (Docket # 104) at 8; Harrises' Mot. Summ. J. Against NCS (Docket # 111) ¶¶ 9-10, 13; Br. Supp. Harrises' Mot. Summ. J. Against NCS (Docket # 111) at 2, 8.

[38] Harrises' Am. Third-Party Compl. (Docket # 83) ¶¶ 9, 11; Harrises' Resp. NCS's Mot. Summ. J. (Docket # 104) ¶ 18; Br. Supp. Harrises' Resp. NCS's Mot. Summ. J. (Docket # 104) at 7-9; Harrises' Mot. Summ. J. Against NCS (Docket # 111) ¶¶ 9-10, 12; Br. Supp. Harrises' Mot. Summ. J. Against NCS (Docket # 111) at 2, 4, 7, 8.

[39] Br. Supp. Harrises' Resp. NCS's Mot. Summ. J. (Docket # 104) at 9; Harrises' Mot. Summ. J. Against NCS (Docket # 111) ¶ 15; Br. Supp. Harrises' Mot. Summ. J. Against NCS (Docket # 111) at 8.

[40] Harrises' Am. Third-Party Compl. (Docket # 83) ¶¶ 10, 16; Harrises' Resp. NCS's Mot. Summ. J. (Docket # 104) ¶ 18; Br. Supp. Harrises' Resp. NCS's Mot. Summ. J. (Docket # 104) at 8; Harrises' Mot. Summ. J. Against NCS (Docket # 111) ¶¶ 11-13; Br. Supp. Harrises' Mot. Summ. J. Against NCS (Docket # 111) at 2, 7, 8.

9

counsel expressly abandoned any claim that NCS had any of those duties except the last one — the duty to provide the Harrises with a "legal team."[41]

Aside from the extreme vagueness of such an alleged contractual duty, there is no evidence to support it. To try to support their claim, the Harrises assert: (1) that on August 4, 2004, a representative of NCS physically led them to the office of Harvey Zameck; (2) that as a result of the introduction, the Harrises retained Zameck to act as their attorney and represent their interests against Allstate; (3) that in the letter dated March 7, 2005, NCS informed the Harrises that their case was being assigned to an unnamed associate of Zameck; and (4) that the letter also stated, however, that Zameck would remain a part of the Harrises' "legal team."[42]

NCS argues that the Harrises' evidence falls short of establishing a contract modification, and of establishing any contractual duty by NCS to provide any sort of "legal team."[43]

The Court concludes that there is no genuine issue of material fact, and that NCS's conduct did not modify the parties' original written contract. First, unilateral action by NCS cannot give rise to a contractual modification, *Quality Prods. & Concepts Co.*, 666 N.W.2d at 258. Second, NCS's conduct on August 4, 2004 was nothing more than an introduction to, and possibly a recommendation of, attorney Zameck. Third, NCS's March 7, 2005 letter to the Harrises says clearly: "This is just a courtesy letter[,]" and the letter does nothing more than give the Harrises forewarning of a future expected letter from their attorney, Harvey Zameck, and a limited preview of what NCS expected Zameck's letter to say. Viewing NCS's letter in a light

---

[41] *See* Transcript, Docket # 175 at 75-77.

[42] *See e.g.*, Harrises' Am. Third-Party Compl. (Docket # 83).

[43] *See e.g.*, NCS's Mot. Summ. J. (Docket # 99).

10

most favorable to the Harrises, the letter is not evidence of any offer or agreement by NCS to undertake any sort of duty to provide the Harrises with an attorney or any sort of "legal team."

Because the original written contract between the Harrises and NCS was neither breached nor modified, NCS is entitled to summary judgment.

## VI.  Conclusion

For the reasons stated in this opinion, the Court will enter an order granting NCS's motion for summary judgment, and denying the Harrises' motion for summary judgment.

**Signed on April 19, 2012**               /s/ Thomas J. Tucker
                                           **Thomas J. Tucker**
                                           **United States Bankruptcy Judge**

11

09-06215-tjt    Doc 178    Filed 04/19/12    Entered 04/19/12 14:37:58    Page 11 of 11